Williams, J.
The prosecution is based upon the act “to regulate the practice of medicine in the state of Ohio,” passed February 27, 1896, (92 O. L., 44-49). If the statute is constitutional, it is not claimed there is any error in the record for which the judgment below should be* reversed. The contention is, that the act, in some of its provisions is repugnant to the Constitution of this state, and in others to the Constitution of the United States; and, that the remaining provisions of the statute are so dependent, in their practical operation, upon those which are subject to these constitutional infirmities, that the whole act becomes invalid. The statute provides that: “Any person practicing medicine or surgery as defined, in section 4403/ in this state, without having first complied with the provisions of section 4403c and 4403d, except as herein provided, shall be deemed guilty of a misdemeanor, and shall be fined not less than twenty dollars nor more than five hundred dollars, or be imprisoned in the county jail not less than thirty days, nor more than one year, or both.” Section 4403y.
Section 4403/, is as follows: “Any person shall be regarded as practicing medicine or surgery within the meaning of this act, who shall append the letters M. D. or M. B. to his name, or for a fee prescribe, direct or recommend for the use of *14 any person, any drug or medicine or any other agency for the treatment, cure or relief of any wound, fracture or bodily injury, infirmity or disease ; provided, however, that nothing in this act shall be construed to prohibit service in case of emergency, or the domestic administration of family remedies; and this act shall not apply to any commissioned medical officer of the United States army, navy or marine hospital service in the discharge of his professional duties, nor to any legally qualified dentist when engaged exclusively in the practice of dentistry, nor to any physician or surgeon from another state or territory, who is a legal practitioner of medicine or surgery in the state or territory in which he resides, when in actual consultation with a legal practitioner of this state, nor to any physician or surgeon residing on the border of a neighboring state, and duly authorized under the laws thereof to practice medicine or surgery therein, whose practice extends into the limits of this state; providing that such practitioner shall not open an office or appoint a place to meet patients or receive cails, within the limits of this state.”
Section 4403c, provides that: “No person shall practice medicine, surgery, or midwifery, in any of its branches, in this state, without first complying with the requirements of this act. If a graduate in medicine or surgery, he shall, either personally, or by letter or proxjq present his diploma to the state board of medical registration and examination for verification. Accompanying such diploma the applicant shall file his affidavit, duly attested, stating that the applicant is the person named in the diploma and is the lawful possessor of the same, and giving his age and the *15 time spent in the study of medicine. If the board shall find the diploma to be genuine, and from a legally chartered medical institution in good standing-, as determined by the board, and the person named therein be the person holding and presenting- the same, the board shall issue its certificate to that effect, signed by its president a,nd secretary; which, when left with the probate judge for record as hereinafter required, shall be conclusive evidence that its owner is entitled to practice medicine or surgery in this state. If a legal practitioner of medicine under the laws of Ohio in force at the time of the passage of this act, but not a graduate of medicine or surgery, as above defined, he shall, either personally, or by letter or proxy, furnish the board an affidavit, duly attested, stating the period during which and the places at which he has been engaged in the practice of medicine or surgery. If the board is satisfied from the affidavit and other information received that the applicant was a legal practitioner of medicine in Ohio at the time of the passage of this act; it shall issue its certificate to that effect, which when left with the probate judge for record, shall be conclusive evidence that its owner is entitled to practice medicine or surgery in this state. If engaged in the practice of medicine in this state at the time of the passage of this act, but not a legal practitioner under the laws in force at such time, nor a graduate in medicine or surgery as above defined, he shall present himself before the board and submit to such examination as to his qualification for the practice of medicine or surgery as ■ the board may require. If such applicant passes an examination satisfactory to the.board, the board shall issue its certifi *16 cate to that effect, which when left with the probate judge for record, shall entitle the owner to practice medicine or surgery in Ohio for a period of one year next ensuing from the date thereof. The board may refuse to grant a certificate to any person guilty of felony or gross immorality, or addicted to the liquor or drug habit to such a degree as to render him unfit to practice medicine or surgery ; and may after notice and hearing, revoke a certificate for like cause. An appeal may be taken from the action of the board refusing to grant or revoking a certificate for such cause, to the Governor and Attorney-General, and the decision of which officers, either affirming or overruling- the action of the state board shall be final.”
And section 4403d, contains the following- provision: “The person receiving a certificate to practice medicine or surgery under section 4403c, shall, before entering upon the practice, leave his certificate with the probate judge of the county in which he resides, for record. The probate judge shall record the same in a book, to be kept for that purpose, and endorse on the margin of the record and on the certificate the time he received the same for record, and make a proper index to all certifi. cates by him recorded. The probate judge shall note in the margin of the record the revocation of a certificate, or any change in the location or death of the owner of a certificate. Upon application the probate judge shall make out a certified copy of any such certificate and the endorsements thereon, and such certified copy shall be prima facie evidence of all matters and facts therein contained. Between the first and thirty-first days of December in each year, the probate judge shall furnish the secretary of the state board, a list of all certificates *17 recorded and in force, and also a list of all certificates which, have been revoked or the owners of which have removed from the county or died during the preceding year. In case of a change of residence, the owner of a certificate shall have the same recorded anew by the probate judge of the county into which he removes.”
The other provisions of the statute are not important in the disposition of the questions in the case.
1. One objection made to the statute is, that by those provisions of section 4403c which authorize the medical board for the causes therein mentioned to refuse or revoke certificates of qualification required of physicians before the3r are entitled to practice in this state, and provide for an appeal;to the Governor and Attorney-General, it assumes' to confer judicial power, which, under section 1, or article IV, of the Constitution of the state, belongs exclusively to the courts.
Undoubtedly, the authority conferred by the provisions referred to includes the power to examine into and decide questions requiring the exercise of judgement, such as might, not inappropriately, be conferred on a court; yet, as said by White, J., in State v. Harmon, 31 Ohio St., 250, 259, “it does not follow that the exercise of such authority is necessarily the exercise of judicial power. The authority to ascertain facts, and apply the law to the facts when ascertained, appertains as well to the other departments of the government as to the judiciary. Judgment and discretion are required by all departménts. ” It would be • difficult to draw the precise line between those functions that may be constitutionally *18 devolved upon the other departments and those which pertain strictly to the judiciary; and so far as we are aware the attempt has not been made. But in numerous instances, from an early period in the history of the state, the legislature has invested various boards, bodies, and officers with the power, and charged them with the duty, of ascertaining facts, and hearing and deciding questions, when deemed necessary or expedient in order to carry into execution laws enacted to accomplish some public need or purpose, or deemed for the public good. Of this nature are those powers conferred on boards of county commissioners, and township trustees, to determine upon the necessity and propriety of establishing, improving, altering, and vacating public roads and ditches, and to ascertain and decide whether the necessary steps required by the law have been taken in the proceedings; also, those with which other boards and officers have been clothed to determine which of several bidders for public works or contracts is the lowest responsible one; those 'which authorize county auditors to make additions to tax duplicates; and many others of a kindred nature which might be mentioned; all requiring, in some manner and degree, and for some purpose, the exercise of the power to hear and determine important questions, sometimes involving large interests. And the validity of this class of legislation has, in the main, never been challenged; but, when called in question, it has been uniformly sustained by the courts. The case of State v. Guilbert, 56 Ohio St., 576, forms' no exception, 'for the powers of the recorder under the statute there in question were essentially those which properly belong to a court. Those conferred on the medical board by the stat *19 ute here under consideration are plainly not of that character; nor, are they made so by the circumstance that an appeal is allowed from its decisions to the Governor of the state and the Attorney-General. These executive officers do not, under the act, any more than does the board, perform the functions of a court. The powers of the board bear a close analogy to those of boards of school examiners, who are authorized to • grant certificates to teach in the public schools to applicants who are found, on examination, to possess the necessary qualifications and furnish satisfactory evidence of good moral character; and to revoke any certificate granted, for intemperance, immoral conduct, or other good cause. These boards, in the discharge of their duties, do not exercise the judicial power which the Constitution has reserved to the courts, but are public agencies designated by the state to aid in making- its common school system effective. And the medical board is but an agency of a like character, clothed with similar powers, to insure the effective execution of a law designed for the promotion of the public health and welfare. The purpose of the statute undoubtedly is, by enforcing the requirements it has prescribed for the admission of persons to the practice of medicine in the state, to prevent those from engaging in the practice of that profession who, from lack of proper knowledge or want of moral rectitude, are unfit to be entrusted with its important and responsible duties. The power to pass upon the qualifications!'; required must necessarily be committed to some board or body other than the legislature, and may be, not inaptly, characterized as administrative, I *20 rather than judicial within the meaning- of the Constitution.
2. These provisions of the statute, it is further contended, are in conflict with section 10, of article I, of the Federal Constitution, which prohibits the passage by any state, of ex post facto laws and bills of attainder. But we are of opinion they are not. The certificates which the board is authorized to refuse or revoke are those provided for by the act. When a person makes his application for a certificate, he invokes such action of the board as it is authorized to take under the act; which i s, either to grant or refuse the certificate as the facts brought before it may appear to warrant. The refusal to grant it, when that is done in accordance with the act, leaves the applicant in no different situation from that which he occupied before his application was made. And, when he accepts a certificate granted by the board, he holds it subject to the provisions of the statute at the time it was issued. The power of revocation then residing in the board, for any of the causes mentioned in the statute, attaches to the certificate as one of the terms and conditions upon which it was granted and accepted, and becomes a part of it, as much so as if expressed in it. So that, neither the refusal to grant nor the revocation of the certificate has any retroactive operation, nor imposes any new or additional punishment or disability for a past act. The statute, in all its provisions, has prospective operation only, and does not purport to have a retroactive effect.
3. Another contention of. the counsel for the plaintiff in error is, that the statute discriminates against physicians and surgeons who reside out of *21 the state, solely on account of their residence, and not for the lack of the necessary qualifications. This result is claimed to follow from those provisions of section 4403¿i which make it necessary for the person obtaining a certificate from the medical board to leave it with the probate judge of the county in which he resides, to entitle him to practice — a requirement with which it is impossible for a non-resident to comply; and those of section 4403/ by which physicians residing in other states and territories are prohibited from opening an office, or appointing a place to meet patients or receive calls within this state, and restricts their right to practice here to cases in which they may be called in consultation. with a legal practitioner of this state, or where, residing on the border of a neighboring state, their practice extends into this state. These provisions, it is contended, operate as a restraint upon the full enjoyment and pursuit of their lawful calling by physicians who are citizens of other states, and are therefore in conflict with section 2, of article IV, of the Federal Constitution, which guarantees to the citizens of each state the privileges and immunities of citizens in the several states ; and also with the fourteenth article of amendment of that Constitution, which forbids any state to make or enforce any law abridging the privileges or immunities of the citizens of the United States. And it is furthermore contended that, the statute being invalid in the particulars referred to, the whole act must fall, becau'se, otherwise, resident physicians would be amenable to the law, leaving those who reside out of the state exempt from its operation; the result of which would be, that the state would thus impose greater burdens on its own citizens than are imposed on *22 non-residents engaged in the same occupation and enjoying the same privileges.
Unless the last of these contentions can be sustained, the first- one, though held to be entirely sound, cannot be made available by the plaintiff in error; for the courts will not enter upon an inquiry into the validity of a law which invades no right of person or propertjr of the party who invites the inquiry. When the alleged offense is charged to have been committed by the plaintiff in error, he was a resident of the state, and it is not competent for him to assert the rights of non-residents ; nor can he interpose objections to the law which alone concern their rights, as a means of defeating the operation of those provisions which are applicable to him, unless the validity of the latter are also involved. Besides, as said by Mr. Justice Miller, in Bradwell v. The State, 16 Wall.. 130, 138, “it has been repeatedly held that the second section of the fourth article of the Constitution has no application to a citizen of the state whose laws are complained of. ” And it is held in that case, that the section of the Constitution referred to, “only guarantees privileges and immunities to the citizens of other states, in that state.”
If, as is urged by counsel, the requirement of the statute concerning the registry of the certificates which physicians must obtain to entitle them to practice in this state is void as against non-residents, either because of. the impossibility of their compliance therewith, or because the statute is thus made to deprive them of a right they otherwise would have, the only result would be that, without the necessity of .such compliance, non-resident physicians would be entitled to practice their profession here. In effect, they would *23 be excepted from the operation of the statute; and it is because they would thus be relieved of a burden which is imposed upon physicians residing in the state, and the latter thus discriminated against,that the entire act is claimed to be invalidated. It is not necessary to adopt this circuity to establish the exemption of non-resident physicians from the necessity of compliance with the act. The statute, as has been noticed, by express provision, excepts from the requirements of obtaining and registering certificates all physicians and surgeons of other states called in consultation with a physician of this state, and all those residing on the border of a neighboring- state whose practice extends into this state. The number thus excepted, or the extent of their .practice, can make no difference, in principle, in the solution of the question here presented. The exception of some, and to a limited extent only, constitutes a discrimination which cannot be any the less subject to the constitutional objection made, than the exception of all of the same class. So that, the question may be resolved into this: Does the exception contained in the statute, in favor of non-resident physicians, render the act obnoxious to the Federal Constitution, as claimed? We think it does not. Under a statute of West Virginia much like ours, and containing a similar exception, a resident physician of that state was prosecuted for practicing medicine without the certificate required by the act. And, upon very full consideration, the act was held constitutional, in the case of Dent v. West Virginia, 129 U. S., 124. And while-it does not 'appear that the question in the form here urged was pressed upon the court in that case, that feature of the statute excepting non-resident physicians from its provisions was not overlooked, *24 but is pointed out in the opinion, where it is said that the statute “applies to all physicians except those who may be called for special cases from another state.” Mr. Justice Field clearly distinguishes that case from those of (Cummings v. Missouri, 4 Wall., 277, and Ex parte Garland, Ibid., 433, and fully sustains the power of the states, under the national constitution, to make and enforce, for the protection of their people, all reasonable regulations and conditions calculated to insure proper qualifications of those who would engage in the practice of medicine, or pursue other professional callings requiring learning and moral integrity for the proper discharge of their duties; and he observes that: “As one means to this end, it has been the practice of different states from time immemorial to exact in many pursuits a certain degree of skill and learning upon which the community may confidently rely, their possession being generally ascertained upon an examination of parties by competent persons, or inferred from a certificate of them in the form of a diploma or license from an institution established for instruction on the subjects, scientific and otherwise, with which such pursuits have to deal. The nature and extent of the qualifications required must depend primarily upon the judgment of the state as to their necessity. If they are appropriate to the calling or profession, and attainable by reasonable study or application, no objections to their validity can be raised because of their stringency or difficulty.” And further, that: “The same reasons which control in imposing conditions upon compliance with which the physician is allowed to practice in the first instance, may call for further conditions as new modes of treating disease are discovered, or a more thorough acquaintance is obtained of *25 the remedial properties of vegetable and mineral substances, or a more accurate knowledge is acquired of the human system, as to the agencies by which it is affected. It would not be deemed a matter for serious discussion that a knowledge of the- new acquisitions of the profession, as it from time to time advances in its attainments for the relief of the sick and suffering, should be required for continuance in its practice, but for the earnestness with which the plaintiff in error insists that by being compelled to obtain the certificate required, and prevented from continuing in his practice without it, he is deprived of his right and estate in his profession without due process of law. ’ ’
And in Bradwell v. The State, supra, it is held that: “The right to control and regulate the granting of licenses to practice law in the courts of a state is one of those powers which are not transferred for protection to the Federal government, and its exercise is in no manner governed or controlled by citizenship of the United States in the party seeking such license.” And, that the right to engage in such practice is not “a privilege or immunity of a citizen of the United States, within the meaning of the first section of the fourteenth article of amendment of the Constitution of the United States.” There is no apparent ground of distinction in this respect between the right to engage in the practice of medicine and that of engaging in the practice of law.
We discover nothing unreasonable in the regulations adopted by the statute in question for the admission of persons to the practice of medicine; •nor any valid objection to the provision excepting therefrom physicians residing in. other states. Physicians called in consultation are usually the *26 most eminent and skillful that can be procured; and those residing on the border of an adjoining state, with a practice extending into this state, can include only those who have a legal standing and established practice in their own state, which the law regards as sufficient evidence of their capacity and character to admit them to continue their practice here. In neither ease are the citizens likely to suffer harm. It was apparently contemplated by the legislature that these two classes embraced in the exception would include'such nonresident physicians as would be likely to engage, in any way, in the practice in this state; or, if not, any others would be so exceptional as to call for no further provision.
When a physician of another state establishes himself in the practice in this state, by opening- an office within it, or regularly engages in the practice here, though it be from place to place, it may be that he should be treated as a resident, within the meaning of the statute. Evidently, to constitute such residence, it is not necessary that he should be an elector. A temporary residence may be of such character and duration as to bring him within the statute. But in what cases that may be so we need not now attempt to point out. The occasion for so doing may arise when a physician coming from another state to engage in such practice shall make complaint that he has been refused a certificate or its registration. We are satisfied that, in its application to persons in the situation of the plaintiff in error, the statute is not open to the objections he here urges against it, but is constitutional and valid. Judgment affirmed.